## RODGERS v. UNITED STATES.
### No. 10264.

Circuit Court of Appeals, Sixth Circuit.
Jan. 13, 1947.

W. C. Rodgers, of Memphis, Tenn. (W. C. Rodgers, of Memphis, Tenn., on the brief), for appellant.

James A. Doyle, of Washington, D. C. (James A. Doyle, Katherine A. Markwell, Wendell Berge, and J. Stephen Doyle, Jr., all of Washington, D. C., and Wm. McClanahan and Thomas D. Dunlap, both of Memphis, Tenn., on the brief), for appellee.

Before HICKS, SIMONS, and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

The judgment challenged in the present appeal is for so-called penalties pursuant to the Agricultural Adjustment Act as amended, 7 U.S.C.A. § 1281 et seq., imposed upon the appellant for marketing excess quota cotton in the years 1940, 1941 and 1942. Subordinate questions involve interest upon the judgment and interest from the time the penalties should have been remitted to the Secretary of Agricul-

ture, such interest having been included and provided for in the judgment.

The Act, 7 U.S.C.A. § 1341 et seq., provides that not later than November 15 of each year the Secretary of Agriculture shall find and proclaim the total supply, the normal supply and the carry-over of cotton as of August 1 of each year, the principal domestic consumption during the marketing year commencing August 1, the principal exports of cotton during such year and the estimated carry-over of cotton as of August 1 next succeeding. If the Secretary finds that the total supply of cotton for the marketing year exceeds by more than 7% the normal supply for such year, he is required to proclaim such fact and marketing quotas shall be in effect during the next succeeding marketing year unless more than one-third of the farmers who are engaged in its production in the preceding year, disapprove thereof in a referendum conducted by the Secretary. Standards for determining quotas are provided and the cotton is apportioned to the states on a baleage basis, which is converted to acres and apportioned to each farm. A producer who markets cotton in excess of the quota established for his farm, must remit to the Secretary the amount per pound prescribed pursuant to the Act.

The facts are not in dispute. The appellant marketed cotton in excess of the quota for the years 1940, 1941, and 1942. The penalties on such excess totaled $7039.52, and are unpaid. As established for the 1940–41 marketing year (7 U.S.C.A. § 1348), they were at the rate of 3¢ per pound, for 1941–42, 7¢ per pound and for 1942–43, 8¢ per pound. Liability for collection of the penalty is primarily upon the buyer of cotton but the producer remains liable for its payment if it is not collected by the buyer or transferee. Prepayment of the penalty may be made, and under certain conditions the producer may deposit it in escrow or give a bond to secure its payment. Quotas were in effect during the years involved and were proclaimed for 1943–44 and approved by the producers. However, on July 10, 1943, the War Food Administrator terminated the quotas for that year as "necessary in order to meet the present emergency and to effectuate the declared policy of the Act." 8 Fed.Reg. 12922, 12923. On September 21, 1943, the War Food Administrator proclaimed that cotton marketing quotas would likewise not be in effect for the marketing year beginning August 1, 1944, in pursuance of the provisions of the Act, "that the powers therein granted shall not be used to discourage the production of sufficient supplies of foods and fibers to maintain normal domestic consumption, taking into consideration current trends in consumption and export and the quantities of substitutes available at fair prices."

The appellant's principal contention is that because cotton quotas were suspended for the 1943–44 marketing year and have not since been renewed, the penalties for which judgment was rendered are not recoverable. He relies upon § 371 of the Act, 7 U.S.C.A. § 1371, which authorizes the Secretary of Agriculture to increase or terminate existing quotas when he finds, upon investigation, that the commodity which is free of marketing restrictions equals the normal supply. He asserts the principle that after the expiration or repeal of a law no penalties can be enforced or punishment inflicted for violations of the law during the time when it was in force, unless provision is made for that purpose by statute. There is no "saving clause" in the Agricultural Adjustment Act. Nevertheless, his contention must be rejected. United States v. Hark, 320 U.S. 531, 64 S.Ct. 359, 88 L.Ed. 290; United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 255; Bowles v. May Hardwood Co., 6 Cir., 140 F.2d 914; O'Neal v. United States, 6 Cir. 140 F.2d 908, certiorari denied 322 U.S 729, 64 S.Ct. 945, 88 L.Ed. 1565. This conclusion is not compelled and gains nothing from the Act of March 22, 1944, Title 1, U.S.C.A., § 29, which, in effect, imports a "saving clause" into every repealed statute providing for a penalty, forfeiture or liability unless precluded by the terms of the statute itself. Section 29, prescribing a rule differing from that of the common law, must be strictly construed and limited to repealed statutes. United States v.

Hark, D.C.Mass., 49 F.Supp. 95, reversed on other grounds, 320 U.S. 531, 64 S.Ct. 359, 88 L.Ed. 290.

In the Hark case the Supreme Court pointed out that the common-law rule that the repeal of a statute ends the power to prosecute for prior violations is absent in the case of a prosecution for violation of a regulation issued pursuant to an existing statute which expresses a continuing policy to enforce which the regulation was authorized. Revocation of the regulation does not repeal the statute. Neither the Agricultural Adjustment Act nor its provisions regulating the production of cotton, have been repealed. The Act still expresses a continuing policy and the suspension orders of the Administrator are declared to be in pursuance of that policy. The appellant may draw no comfort from United States v. Chambers, 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763, 89 A.L.R. 1510, wherein it is declared that in case a statute is repealed or rendered inoperative, no further proceedings can be had to enforce it unless competent authority has kept it alive for that purpose. The present statute, as already observed, has not been repealed nor has it been rendered inoperative. So long as it remains in effect, quotas may be established whenever the conditions prescribed demand them and the purpose of the Act is to be served. The Chambers case dealt with the National Prohibition Law. It had not then been repealed but its continued efficacy was terminated by controlling action from the very source of power which permitted it to be enacted and enforced. No such authority has here been withdrawn by the only power competent to withdraw it—the Congress of the United States.

The appellant's contention that no interest is collectible on the penalties, is based upon Title 28, U.S.C.A., § 811, which permits the allowance of interest on civil judgments in all cases where, by the law of the state, such interest may be recovered, and the rule in Tennessee that interest is not recoverable on penalties. McCreary v. First Nat. Bank, 109 Tenn. 128, 70 S.W. 821. This requires consideration whether the so-called penalties provided in the Agricultural Adjustment Act are, in essence, true penalties.

In common parlance and by dictionary definition the term "penalty" is more commonly applied to punishment for crime or other offenses. Bouvier defines it as "punishment inflicted by law for its violation." The words "penal" and "penalty" in their strict and primary sense, denote a punishment provided by statute for an unlawful act. United States v. LaFranca, 282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551; United States v. Chouteau, 102 U.S. 603, 26 L.Ed. 246; United States v. Jaffrey, 8 Cir., 97 F.2d 488. In the last cited case it was said that the term "penalty" involves the idea of punishment and its character is not changed by the mode in which it is inflicted, whether by a civil action or a criminal one. See also United States v. $420, D.C.S.D.Ala., 162 F. 803.

In Usher v. United States, 146 F.2d 369, 371, the Circuit Court of Appeals for the Fourth Circuit, in deciding that liability for penalties under the present Act need not be established by proof beyond a reasonable doubt, said: "The object of the Act and the Regulation was to prevent an over-production of cotton. It was not a crime to produce cotton in excess of the allotment, but if there was such over-production the penalty was imposed, not as a punishment for a crime but, to prevent over-production of the commodity. The grower was at liberty to produce all the cotton he wished to produce provided this penalty was complied with. The penalty differs from an ordinary penalty which is imposed in connection with the commission of an unlawful act. It is significant * * * that the administrative regulations provide that the penalty may be prepaid, deposited in escrow, or secured, by the producer. * * *."

We are persuaded that the so-called penalties prescribed in the Act are not in a true sense the penalties considered by the Tennessee Court upon which interest was held not recoverable. The McCreary case, supra, involved penalties under the National Banking Act for usury, an imposition

that was definitely penal in nature and therefore subject to the rule of strict construction. There is, under the statute here involved, no prohibition upon the production or marketing of excess quota cotton. Under its power to regulate interstate commerce the Congress, to avoid a wasteful, uneconomic surplus, provided for the establishment of quotas and sought to discourage production and sale in excess of such quotas. We said in Fraser v. United States, 145 F.2d 139, 142, "No question of due process inheres in holding the buyer who collects the penalty liable for its payment. When, with notice, he buys non-quota cotton, he subjects himself to the provisions of the Act and may not complain. He is under no obligation to buy." Similar language may be applied to the seller. He is under no obligation to produce, and having produced is under no obligation to sell; but selling, he incurs an obligation to the Secretary of Agriculture. It is a debt which arises through operation of law. It may not be enforced by criminal sanctions, as in the case of a fine. It is not imposed as punishment but to carry out the power of Congress to regulate transactions in interstate commerce.

United States v. West Texas Cottonoil Co., 5 Cir., 155 F.2d 463, 466, is, in one aspect, in conflict with the view here expressed. There the court drew a distinction between interest recoverable on penalties and interest recoverable on a judgment for penalties, sustaining interest on the judgment but denying recovery of interest prior to judgment, saying, "Since in fact and in law the amount sued for is a penalty, no interest can be recovered on it before judgment." It does not appear, however, that in that case the distinction here and elsewhere drawn between a true penalty as punishment for law violation and a sanction such as is here involved, was pressed upon or given consideration by the court. In any event, the case is authority for the proposition that the judgment below may bear interest from the date of its pronouncement.

■■ There is left the question whether the court was in error in adding to the penalties interest from the date when the penalties should have been remitted to the

Secretary. The general rule, of course, is *that liquidated demands bear interest while those unliquidated do not.* Where, however, the amount can be determined by mere computation at the commencement of the action, interest is recoverable from the date the liability accrues. Abell v. Anderson, 6 Cir., 148 F.2d 372; Robertson v. Miller, 2 Cir., 286 F. 503. The amount of the grower's quotas was fixed. The number of pounds sold over quota was known, as was the penalty per pound. Nothing was left to be done except a simple mathematical computation at the time the excess cotton was marketed. The appellant's liability was then fixed and determinable. This is clearly recognized in the provisions of the Act which permit prepayment of the penalty, its deposit in escrow or the filing of a bond to secure its payment.

Affirmed.