**Robert B. REICH, Secretary of Labor, Petitioner,**

v.

**SEA SPRITE BOAT COMPANY, INCORPORATED, Continental Marine Corporation, and Robert F. Smith, Respondents.**

No. 92–1650.

United States Court of Appeals, Seventh Circuit.

Submitted July 31, 1995.

Decided Aug. 28, 1995.

John H. Secaras, Sol. Gen. (submitted), Chicago, IL, Cynthia L. Attwood, Ronald J. Gottlieb, Marshall J. Breger, Dept. of Labor, Office of the Sol., Ray Darling, Jr., Occupational Safety & Health Review Com'n, Washington, DC, for petitioner.

Floyd Babbitt, Donald J. Vogel, Fagel & Haber, Chicago, IL, Frank J. Simutis, Ackman, Marek, Boyd & Simutis, Watseka, IL, Tyrone C. Fahner, Timothy S. Bishop, Jeffrey W. Sarles, Mayer, Brown & Platt, Chicago, IL, for respondents.

Before EASTERBROOK, RIPPLE, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

Earlier this year we held that Sea Sprite Boat Company was in contempt of an order this court entered in 1992. 50 F.3d 413 (7th Cir.1995). We ordered Sea Sprite to pay $1,452,000 on top of the $135,000 that remained unpaid despite our 1992 order. We also added Continental Marine Corporation and Robert F. Smith to the case as respondents and offered them an opportunity to show why they should not be held in contempt of court. On the record then before the court Smith and Continental appeared to be as culpable as Sea Sprite (Smith was responsible for Sea Sprite's actions, and Continental is Sea Sprite's successor in interest), but we thought the new respondents entitled to show otherwise.

Extended that opportunity, Smith and Continental (collectively "Smith") decided not to use it. They informed our Special Master that they had no evidence to offer, and the Master accordingly filed a short recommendation that they be held in contempt of court. Smith has filed exceptions, arguing that all violations have been rectified. The Secretary of Labor stipulated that the boatbuild-

ing operations have complied with 29 C.F.R. § 1910.107(m)(1) since May 1, 1994. After we issued our first opinion, Sea Sprite paid both the $135,000 penalty for violating § 1910.107(m)(1) and the $1,452,000 sanction for contempt of court. Because on his view all violations have been redressed, Smith argues that he should be absolved of liability. Civil contempt is designed to produce compliance with the court's order; once that aim has been achieved, Smith insists, no legitimate purpose could be served by a formal adjudication.

Things are not quite that simple, however, as Smith recognizes. The Secretary of Labor does not agree that the court's orders have been complied with fully. When remitting the $135,000 administrative penalty Sea Sprite added interest only for the time since our order of 1992. The Secretary believes that interest has been accumulating since 1989, and he observes that Smith, as the sole stockholder in both Sea Sprite and Continental, is ultimately responsible for its payment. Smith responds by relying on the common law rule that prejudgment interest is unavailable on penalties, a rule that has led one district court to hold that interest runs on sanctions under the Occupational Safety and Health Act only from the date a court enforces the administrative order. *Marshall v. Painting by C.D.C., Inc.*, 497 F.Supp. 653 (E.D.N.Y.1980).

No statute or regulation decides this question one way or the other. OSHA is silent on interest, and the Debt Collection Act of 1982, 31 U.S.C. §§ 3701–17, does not address the status of penalties. See *United States v. Texas*, — U.S. —, — – —, 113 S.Ct. 1631, 1636–37, 123 L.Ed.2d 245 (1993) (by implication). The rule that penalties do not draw interest governs a category of cases in which Congress specifies supra-compensatory awards. For example, the Fair Labor Standards Act provides that if an employer wilfully does not pay the minimum wage, the aggrieved employee collects double damages. The doubling component is a penalty, and interest runs on it only from the date of judgment. See *Illinois Central R.R. v. Texas Eastern Transmission Corp.*, 551 F.2d 943 (5th Cir.1977), cited with approval in *In re Marshall*, 970 F.2d 383, 385 (7th Cir.1992). Indeed, we have held that the penalty component of such double or triple damages schemes sometimes serves in lieu of prejudgment interest on the compensatory portion of the award. *Fortino v. Quasar Co.*, 950 F.2d 389, 397–98 (7th Cir.1991). Contra, *Starceski v. Westinghouse Electric Corp.*, 54 F.3d 1089, 1101–03 (3d Cir.1995) (holding that the plaintiff is entitled to prejudgment interest on the compensatory portion of the award). Prejudgment interest also creates a risk of exceeding the maximum penalty, often set at a maximum dollar award per transgression. See *Rodgers v. United States*, 332 U.S. 371, 374, 68 S.Ct. 5, 7, 92 L.Ed. 3 (1947). But with the exception of *Painting by C.D.C.*, none of these cases presents the question when interest begins to run on an award made by an agency and enforced later by a court of appeals. One can say that only the judicial order is the "judgment," but one could as readily say that the final administrative order marks the end of prejudgment (really, pre-decision) time and the beginning of interest. Starting interest with this event avoids any risk of exceeding the statutory limit for penalties.

No one doubts that if a district court pronounces a penalty under OSHA, interest runs while the court of appeals considers whether to affirm or reverse that judgment. 28 U.S.C. § 1961; *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990). In many statutory schemes an agency serves the role of the district court, and the application for enforcement is the equivalent of extending the aggrieved party an option to "appeal." The Department of Labor gave Sea Sprite an opportunity for an evidentiary hearing, and, as our first opinion stresses, the Department's order of April 1989 was a final resolution of the dispute. Under 29 U.S.C. § 659(a), the administrative order became "a final order of the Commission and not subject to review by any court or agency" after Sea Sprite let 15 working days pass without protest. The proceedings in the court of appeals are not at all equivalent to a trial leading to a judgment; our role is one of enforcement—not only of the monetary award but also of the underlying order to

comply with the regulation. See *Frank Irey, Jr., Inc. v. OSHRC*, 519 F.2d 1200, 1206 (3d Cir.1974) (comparing an uncontested administrative order to a default on which the court summarily enters judgment), affirmed on other grounds under the name *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1975). If interest starts to run on a "penalty" when the court of *nisi prius* makes its decision, why should it not equally commence when the tribunal of first instance is denominated an "agency"? We can't think of a reason, and Smith does not offer one beyond the observation in *Illinois Central R.R.* that "a penalty does not reflect damages to the plaintiff but is assessed to encourage certain conduct on the part of the party penalized." 551 F.2d at 944. This may be a good reason to withhold interest until the sanction is quantified—for the tribunal imposing it may take account of delay by increasing the sanction, and prejudgment interest then would be double counting—but it does not justify withholding interest while a quantified penalty is reviewed in a higher tribunal. Under the Debt Collection Act an agency may make this explicit, see 31 U.S.C. § 3717(e)(2), and the existence of this express power implies that there is no insuperable presumption against interest pending judicial review.

Although we can't think of any reason to withhold interest during the period between imposition and enforcement of a penalty, several reasons support interest. The parallel to an appeal is one. Inflation is another. The Secretary thought that $135,000 *in 1989 dollars* was an apt sanction for Sea Sprite's violation of the regulation between 1986 and 1989. Over the next three years the value of a dollar fell by some 11% (the GNP Price Deflator was 108.5 in 1989 and 120.9 in 1992); interest makes up for change in the value of money and prevents inflation from bestowing windfalls on wrongdoers. Still a third reason is the desire to promote compliance and reduce demands on the judicial system. If interest does not commence until the court of appeals enforces the award, then rational businesses will refuse to pay. Firms cannot do worse by stalling, and the Secretary may neglect to obtain a judicial order; even if the Secretary acts, they have the value of the money in the interim and are better off for the delay. Forcing the Secretary to commence judicial proceedings does a disservice to other persons, who must wait in a longer queue for judges' attention. Finally, interest during the period between assessment and enforcement compensates the United States for the risk of nonpayment, a risk that turned out to be substantial in this case. (Recall from our first opinion that Smith transferred Sea Sprite's assets to Continental for the avowed purpose of hiding them from the firm's creditors.) Federal courts exercising common law powers have found these reasons adequate to create a strong presumption in favor of interest, even when equitable considerations seem to look the other way. See *Milwaukee v. Cement Division of National Gypsum Co.*, —— U.S. ——, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995). They are adequate to require the payment of interest for the period between the administrative decision and the conclusion of judicial review.

■ Because Sea Sprite owes approximately $50,000 more than it has paid so far, Smith's liability may make a difference. Our prior opinion shows that Smith was responsible for Sea Sprite's defiance of our order. Corporate officers who procure their firm's disobedience to judicial orders are responsible for their acts, and we therefore conclude that Smith is in contempt of court, as is his creature Continental Marine. Once the interest has been paid, however, the contempt will be deemed purged. Although the Secretary asks us to withhold a purge finding, for fear that Smith and his firms will revert to their old ways, this prospect does not call for an anticipatory sanction. The Department of Labor is free to inspect the boat-building business, and if it finds new violations it can reopen these proceedings. As things stand, however, the respondents have been in compliance with the regulation since 1994, and when they complete the satisfaction of their financial obligations they are entitled to be free from the stigma the label "contemnor" carries. Moreover, we deny the Secretary's request that we direct the respondents to pay the costs of the investigation and the Department's legal fees. The penalty for

contempt of court was set high enough to cover these costs. Our prior order, which fixed Sea Sprite's obligations, did not require it to pay these fees and expenses; Smith and Continental are jointly and severally liable for Sea Sprite's obligations, not for extra obligations.

We therefore make the following findings:

1. Interest runs on the $135,000 penalty beginning April 5, 1989.

2. Robert F. Smith and Continental Marine Corporation are in contempt of this court's order of May 5, 1992.

3. The contempt of all three respondents will be deemed purged when the interest on the 1989 penalty has been paid, but all three respondents remain subject to the other requirements of the order of May 5, 1992.