169 F.3d 110
 BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM,
Plaintiff-Appellant-CrossAppellee,
v.
Ghaith R. PHARAON, Defendant-Appellee-CrossAppellant,
Alanwood Anstalt, as Trustee of the Brookpark Trust, and on
behalf of the named beneficiaries of the Brookpark
Trust, Intervenor-Defendant-Appellee.
 Docket Nos. 98-6101(L), 98-6121(CON).
 United States Court of Appeals,
Second Circuit.
 Heard Oct. 19, 1998.
Decided Feb. 24, 1999.
 
 Thomas C. Baxter, Jr., New York, N.Y. (Shari D. Leventhal, Federal Reserve Bank of New York, New York, N.Y.; James V. Mattingly, Jr., Richard M. Ashton, Richard A. Small, Federal Reserve System, Wash., D.C., on the brief), for plaintiff-appellant-cross-appellee.
 Richard F. Lawler, New York, N.Y. (Philip M. Smith, John C. Canoni, Whitman Breed Abbott & Morgan, New York, N.Y., on the brief), for defendant-appellee-cross-appellant.
 Before: NEWMAN and JACOBS, Circuit Judges and TSOUCALAS,* Judge.
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 This appeal presents two issues concerning a civil penalty levied by the Board of Governors of the Federal Reserve System ("the Board"). The first is whether the Board is entitled to the ten percent surcharge on the penalty authorized by the Federal Debt Collection Procedures Act ("FDCP Act"), 28 U.S.C. §§ 3001-3308 (1994), in certain actions brought by the United States to recover debts. The second is whether the Board is entitled to an award of interest on the penalty, accruing from the date by which the Board's order directs payment of the penalty through the date a judgment enforcing that order is entered.
 
 
 2
 These issues arise on an appeal by the Board and a cross-appeal by Ghaith R. Pharaon from a partial final judgment of the United States District Court for the Southern District of New York (Harold Baer, Jr., Judge), enforcing an order previously affirmed by the United States Court of Appeals for the District of Columbia. After granting the Board's motion for summary judgment enforcing a final agency order assessing a $37 million civil penalty against Pharaon for his violation of federal laws governing bank holding companies, the District Court imposed a ten percent surcharge on the penalty pursuant to section 3011 of the FDCP Act, but denied the Board's motion for an award of interest on the penalty. See Board of Governors of the Federal Reserve v. Pharaon, No. 91-6250, 1998 WL 122593 (S.D.N.Y. March 18, 1998). The Board appeals from the denial of interest, and Pharaon cross-appeals from the award of a surcharge. We affirm the District Court's imposition of a surcharge, but reverse the denial of interest.
 
 Background
 
 3
 This case arises out of Pharaon's involvement with the ill-fated Bank of Credit and Commerce International ("BCCI"), of which he was a major shareholder. On September 13, 1991, the Board filed a Notice of Assessment, alleging violations of sections 3(a) and 5(c) of the Bank Holding Company Act, 12 U.S.C. §§ 1842(a)(1), 1844(c), and assessing a civil penalty of $37 million against Pharaon. Pharaon was charged with participating in a scheme whereby the BCCI, using Pharaon as a front man, acquired control of Independence Bank in Encino, California, without the requisite prior approval of the Board.
 
 
 4
 Concurrently with the filing of its administrative charges, the Board obtained from the District Court a temporary restraining order ("TRO"), preventing Pharaon from removing or dissipating his assets in the United States during the pendency of the Board's proceeding, pursuant to the Federal Deposit Insurance Act ("FDI Act"), 12 U.S.C. § 1818(i)(4), and the FDCP Act. See Board of Governors of the Federal Reserve System v. Pharaon, 140 F.R.D. 634, 635 (S.D.N.Y.1991) (noting that TRO was extended on consent). Subsequently, Pharaon was indicted for criminal violations of federal banking laws; since November 1991, he has been a fugitive.
 
 
 5
 Despite his fugitive status, Pharaon promptly answered the Board's Notice of Assessment through counsel and requested a hearing on the charges. An adversarial hearing lasting nineteen days was held before an administrative law judge ("ALJ") in the fall of 1995. Following that hearing, the Board adopted the ALJ's recommended decision and issued a Final Order on January 31, 1997. In the Final Order, the Board assessed a $37 million civil penalty and ordered payment by March 3, 1997. On Pharaon's appeal, the District of Columbia Circuit affirmed the Board's finding that Pharaon was personally liable for his participation in the BCCI scheme and upheld the $37 million penalty. See Pharaon v. Board of Governors of the Federal Reserve System, 135 F.3d 148, 154-57 (D.C.Cir.1998).
 
 
 6
 Upon Pharaon's failure to pay the penalty, the Board filed an amended complaint in May 1997 in the Southern District of New York. In August, the Board moved for partial summary judgment, requesting the District Court to (i) enter judgment against Pharaon in the amount of $37 million, see 12 U.S.C. § 1818(i)(1) (authorizing the Board to enforce a penalty order by commencing an action in any United States district court); (ii) impose a ten percent surcharge on the civil penalty, see 28 U.S.C. § 3011; and (iii) award prejudgment interest on the penalty from March 3, 1997, the date by which the Board's Final Order directed Pharaon to pay the penalty. Pharaon contested the surcharge and the interest, but did not oppose entry of judgment against him in the amount of $37 million.
 
 
 7
 The District Court held that a ten percent surcharge was appropriate under section 3011 of the FDCP Act, which authorizes the United States, under certain circumstances, to recover a surcharge for the cost of litigation and enforcement of a claim for a debt. See Pharaon, 1998 WL 122593, at * 1-* 3. The Court concluded that the Board was entitled to the surcharge because it had sought a prejudgment remedy against Pharaon pursuant to subchapter B of the FDCP Act, one of the circumstances under which the United States can become entitled to a surcharge under the Act. See id. The Court declined to award prejudgment interest based on its view that such an award would violate the well settled rule against awarding prejudgment interest on penalties. See id. at * 4. Judge Baer certified the partial judgment for interlocutory appeal. See Fed.R.Civ.P. 54(b).
 
 Discussion
 I. The Ten Percent Surcharge
 
 8
 The FDCP Act provides that "the United States is entitled to recover a surcharge of 10 percent of the amount of the debt ... to cover the cost of processing and handling the litigation and enforcement ... of the claim for such debt." 28 U.S.C. § 3011(a). To be entitled to the surcharge, the United States, or its agency, must have initiated "an action or proceeding under subchapter B or C" of the FDCP Act.[1] Id. Subchapter B, at issue in this case, provides for prejudgment remedies, which are defined to include "attachment, receivership, garnishment, or sequestration." 28 U.S.C. § 3002(11).
 
 
 9
 The Board sought such a prejudgment remedy against Pharaon in 1991. See Complaint at 7-9. Nevertheless, Pharaon contends that the imposition of a surcharge is not proper because the prejudgment remedy that the Board obtained was granted pursuant to the FDI Act, 12 U.S.C. § 1818(i)(4), not the FDCP Act. In addition, Pharaon asserts that even if the prejudgment remedy was granted pursuant to the FDCP Act, the Board was not entitled to such a remedy under that Act and, therefore, is not entitled to the surcharge.
 
 
 10
 Pharaon's contention that the Board was not granted a prejudgment remedy pursuant to the FDCP Act ignores the plain language of the District Court's order granting that remedy. Acting upon the Board's request for relief pursuant to the FDCP Act, see Complaint at 1, 7-9, the District Court explicitly cited the Act as authority for the issuance of its order restraining Pharaon from removing or dissipating his assets in the United States pending resolution of the Board's proceeding, see TRO at 1. Furthermore, in summarizing the procedural history of this case in a subsequent opinion, the District Court noted, "The TRO froze Pharaon's assets in the United States, pursuant to Section 8(i) of the [FDI Act] and the Debt Collection Act, 28 U.S.C. §§ 3001-3015." Pharaon, 140 F.R.D. at 635 (emphasis added). The fact that the District Court might have relied principally on the FDI Act, as suggested by the Court's recitation of the history of this case in another opinion, see Board of Governors of the Federal Reserve System v. Pharaon, 140 F.R.D. 642, 643-44 & n.2 (S.D.N.Y.1991), does not mean that the prejudgment attachment was not obtained, at least in part, pursuant to the FDCP Act. Since the prejudgment remedy was sufficiently grounded on subchapter B of the FDCP Act, the issue becomes whether such a remedy was properly ordered under that Act.
 
 
 11
 Subchapter B of the FDCP Act provides that "[t]he United States may, in a proceeding in conjunction with the complaint or at any time after the filing of a civil action on a claim for a debt, make application ... to a court to issue any prejudgment remedy." 28 U.S.C. § 3101(a) (emphasis added). Pharaon contends that because the assessment was not due and payable until March 31, 1997, the date by which the Board's Final Order required payment, the action commenced against him in 1991 was not one "on a claim for a debt" and, therefore, at that time the Board was not entitled to a prejudgment remedy under the FDCP Act.
 
 
 12
 Pharaon's argument is unpersuasive. The FDCP Act does not define the term "debt" as only an amount that is due and payable. Rather, it defines the term as including "an amount that is owing to the United States on account of a[n] ... assessment." 28 U.S.C. § 3002(3)(B). The penalty levied against Pharaon in 1991 was indisputably an "assessment." Furthermore, it was "an amount owing to the United States" within the meaning of the FDCP Act.
 
 
 13
 The Board has the authority to "assess[ ] and collect[ ]" penalties by issuing a notice of assessment. 12 U.S.C. § 1818(i)(2)(E) (1994). Typically, the recipient of a notice of assessment has sixty days from the date of the notice's issuance to pay the penalty, though the Board may make a penalty payable immediately upon receipt of a notice of assessment under certain circumstances. See 12 C.F.R. § 263.64(a) (1998). Although Pharaon's request for an administrative hearing suspended the Board's authority to require payment of the assessment until the issuance of a final order, see id. ("If a timely request for a formal hearing to challenge an assessment of civil penalty is filed, payment of the penalty shall not be required unless and until the Board issues a final order of assessment following the hearing."), it did not affect the existence of Pharaon's liability for the $37 million penalty.
 
 
 14
 By authorizing prejudgment remedies in an action asserting a claim for an amount owing to the United States, Congress clearly intended to authorize the use of such remedies prior to a formal determination that such amount must be paid to the United States by a certain date. The contrary view not only ignores the clear implication of the term "a claim," but also is at odds with the intent of Congress in enacting the FDCP Act, i.e., "to create a comprehensive statutory framework for the collection of debts owed to the United States government" in order to "improve the efficiency and speed in collecting those debts." H.R.Rep. No. 101-736 (1990), reprinted in, 1990 U.S.C.C.A.N. 6630, 6631. Prejudgment remedies are powerful devices for the speedy and efficient collection of debts, and we see no indication that Congress did not intend to afford agencies such as the Board the opportunity to use them, prior to the issuance of a final agency order, in aid of the assessment and ultimate collection of administrative penalties.
 
 
 15
 The assessment against Pharaon became an amount owing to the United States when the Board issued its Notice of Assessment. Accordingly, the action commenced by the Board in 1991 was one "on a claim for a debt." Thus, because the Board sought a prejudgment remedy that was authorized by subchapter B of the FDCP Act and was issued under that Act, it is entitled to recover a ten percent surcharge.
 
 II. The Interest Award
 
 16
 The Board contends that the District Court erred in denying its request for an award of interest on the penalty. Interest is sought from March 3, 1997, the date by which the Board's Final Order required payment of the penalty, through March 31, 1998, the date on which the District Court's judgment was entered.[2] The statute authorizing the penalty is silent on whether an award of interest is permissible. See 12 U.S.C. § 1847(b)(1994). "Far from indicating a legislative determination that prejudgment interest should not be awarded, however, the absence of a statute [authorizing interest] merely indicates that the question is governed by traditional judge-made principles." City of Milwaukee v. Cement Division of National Gypsum, 515 U.S. 189, 194, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995). The District Court denied the Board's request because it concluded that an award of interest in this case would be contrary to the "well-settled rule that penalties do not carry prejudgment interest." Pharaon, 1998 WL 122593, at * 4 (citing Rodgers v. United States, 332 U.S. 371, 376, 68 S.Ct. 5, 92 L.Ed. 3 (1947); Wickham Contracting Co. v. Local Union No. 3, 955 F.2d 831, 834 (2d Cir.1992); Marshall v. Painting By C.D.C., Inc., 497 F.Supp. 653, 654 (E.D.N.Y.1980)).
 
 
 17
 Though the rule against prejudgment interest on penalties has been frequently invoked, as the cases cited by the District Court demonstrate, that rule has developed in the context of penalties awarded by district court judgments, and is not applicable to the context of penalties determined to be owing by final agency orders. In the context of cases originating in a district court, the dividing line between a claim and a legally binding obligation is the trial court's judgment. Penalties imposed by administrative agencies after adjudicatory hearings present a very different context. As the Seventh Circuit noted in a closely analogous case, "One can say that only the judicial order is the 'judgment,' but one could as readily say that the final administrative order marks the end of prejudgment (really, pre-decision) time and the beginning of interest." Reich v. Sea Sprite Boat Co., 64 F.3d 332, 333 (7th Cir.1995) (holding that interest on a penalty imposed for violation of the Occupational Safety and Health Act ran from date the administrative penalty became a final and binding order).
 
 
 18
 In the context of a proceeding by the Board under the FDI Act, the administrative agency serves the role of a trial court and its order is analogous to the final decision of a district court. Indeed, a final order of the Board is appealable directly to a court of appeals, see 12 U.S.C. § 1818(h)(2), and, absent a stay, the order remains effective pending appeal, see id. § 1818(h)(3). Here, an ALJ conducted a nineteen-day evidentiary hearing, during which Pharaon, through counsel, challenged the Board's case against him. After reviewing the evidence, the ALJ's decision, and Pharaon's exceptions, the Board ordered Pharaon to pay a $37 million penalty. Pharaon exercised his right to appeal this decision to the District of Columbia Circuit.
 
 
 19
 In this context, an agency order is akin to a district court judgment in all respects relevant to the award of interest. Like the Seventh Circuit, we see no reason why interest on a penalty should not run from the issuance of a final administrative order, just as it does from a district court's entry of judgment pursuant to 28 U.S.C. § 1961 (1994) and Fed. R.App. P. 37(a). See Sea Sprite, 64 F.3d at 334 ("If interest starts to run on a 'penalty' when the court of nisi prius makes its decision, why should it not equally commence when the tribunal of first instance is denominated an 'agency?' "). But see Painting By C.D.C., Inc., 497 F.Supp. at 654.
 
 
 20
 Moreover, there are several compelling reasons supporting the award of interest in such cases, many of which are valid here even though the $37 million has been held by the Board, presumably in an interest-bearing account. As the Seventh Circuit noted in Sea Sprite:
 
 
 21
 The parallel to an appeal is one. Inflation is another.... [I]nterest makes up for change in the value of money and prevents inflation from bestowing windfalls on wrongdoers. Still a third reason is the desire to promote compliance and reduce demands on the judicial system. If interest does not commence until the [award is enforced by a court], then rational businesses will refuse to pay. Firms cannot do worse by stalling, and the [agency] may neglect to obtain a judicial order; even if the [agency] acts, they have the value of the money in the interim and are better off for the delay. Forcing the [agency] to commence judicial proceedings does a disservice to other persons, who must wait in a longer queue for judges' attention. Finally, interest during the period between assessment and enforcement compensates the United States for the risk of nonpayment....
 
 
 22
 Sea Sprite, 64 F.3d at 334.
 
 
 23
 In Pharaon's case, the $37 million penalty was originally assessed in 1991 and converted into a binding order in 1997. Due to inflation, the economic value of the penalty has decreased since the Board issued its Final Order; the Board is entitled to some compensation for that diminution in value. Furthermore, if interest is not awarded from the date by which Pharaon was ordered by the Board to pay the penalty, he stands to benefit from his prolonged delay by the amount of interest that has been earned on the substantial sum of $37 million between that date and the District Court's entry of judgment against him. The assessment of post-agency-order, pre-court-judgment interest promotes compliance with lawfully issued administrative orders, which, in turn, promotes the efficient use of judicial time and resources. All of these concerns support an award of interest in this case.
 
 
 24
 This reasoning is not inconsistent with the traditional rationales for disallowing prejudgment interest in non-agency cases. In general, courts have been concerned that prejudgment interest not be awarded (i) where punitive damages are at issue, lest a double penalty be inflicted or the maximum penalty be exceeded, see Rodgers, 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3; or (ii) where damages are unliquidated, see Wickham, 955 F.2d at 831, 838 (citing cases). When an administrative penalty has been assessed and a final order--appealable only to a court of appeals--issued, these concerns are not present.
 
 
 25
 Nor is our holding inconsistent with Rodgers v. United States, 332 U.S. at 376, 68 S.Ct. 5, where the Supreme Court held that prejudgment interest on a penalty imposed pursuant to the Agricultural Adjustment Act of 1938 ("AAA") was not appropriate. Under the AAA, farmers were allotted a certain quota of cotton they could grow; any farmer who marketed cotton in excess of allotment was required to pay a specified fine per pound. See Rodgers v. United States, 158 F.2d 835, 836 (6th Cir.1947). Fines were considered "due" on the date the farmer sold any over-allotment cotton. See id. at 838. Based on the fact that the amount of the fine and the date on which it should have been paid were easily determinable, the Sixth Circuit affirmed the district court's decision to grant interest on the fine from the date the farmer sold the excess cotton. The Supreme Court reversed, finding an award of interest inconsistent with the congressional intent. See Rodgers, 332 U.S. at 374-76, 68 S.Ct. 5.
 
 
 26
 The Supreme Court reasoned that because the fine--like a criminal penalty--was punitive, intended to deter and punish over-allotment selling, interest was not necessary to compensate the Government. See id. at 374, 68 S.Ct. 5 ("The contention is hardly supportable that the Federal Government suffers money damages or loss, in the common law sense, to be compensated for by interest, when one convicted of a crime fails promptly to pay a money fine assessed against him."). In addition, the Court suggested that the denial of interest on penalties rests on a concern that the punishment fixed for certain conduct not be expanded beyond that authorized by statute. See id.
 
 
 27
 In our view, Rodgers presented a different question from that raised in this appeal. Most significantly, there had been no agency adjudication resulting in a final order prior to the Government's resort to the federal judiciary in that case. Rather, the district court's determination that Rodgers was liable for the fines was the first formal determination that he had violated the AAA. Furthermore, Rodgers was not given the opportunity to challenge the propriety of the Act's application to his conduct prior to the time the fines were considered "due"; unlike the circumstances of this case, the fines were "due" on the date of Rodgers' wrongdoing. Apparently, the only forum in which he could challenge the fines was a district court; thus, until judgment was entered, there was a chance that the application of the Act in his case was improper and the fines were not owed.
 
 
 28
 In the instant case, the Board requests interest only from the date its Final Order was issued. Prior to the issuance of that order, Pharaon was afforded the opportunity to challenge the Board's accusations in an adversarial hearing. Unlike Rodgers, Pharaon is the subject of a final agency order enforceable by a federal district court that lacks the authority to modify or set aside the order. See 12 U.S.C. § 1818(i)(1). The distinctions between the facts of this case and those of Rodgers warrant a different result.
 
 Conclusion
 
 29
 The judgment of the District Court is affirmed in part and reversed in part. The case is remanded for the computation of interest accruing from March 3, 1997, the date by which Pharaon was ordered by the Board's Final Order to pay the penalty, through March 31, 1998, the date judgment was entered by the District Court. The Board may recover its costs.
 
 
 
 *
 Honorable Nicholas Tsoucalas, of the United States Court of International Trade, sitting by designation
 
 
 [1]
 The surcharge is not available in actions where the United States receives an attorney's fee, or if the statute underlying its claim otherwise provides for costs. See 28 U.S.C. § 3011(b). Neither limitation is applicable here
 
 
 [2]
 After entry of judgment, interest is allowed pursuant to 28 U.S.C. § 1961 (1994)