# CITY OF MILWAUKEE *v.* CEMENT DIVISION, NATIONAL GYPSUM CO., ET AL.

No. 94–788.  Argued April 24, 1995—Decided June 12, 1995

STEVENS, J., delivered the opinion of the Court, in which all other Members joined, except BREYER, J., who took no part in the consideration or decision of the case.

*David A. Strauss* argued the cause for petitioner. With him on the briefs were *Grant F. Langley, Rudolph M. Konrad,* and *Michael Sturley.*

*Harney B. Stover, Jr.,* argued the cause and filed a brief for respondents.

JUSTICE STEVENS delivered the opinion of the Court.

This is an admiralty case in which the plaintiff's loss was primarily attributable to its own negligence. The question presented is whether that fact, together with the existence of a genuine dispute over liability, justified the District Court's departure from the general rule that prejudgment interest should be awarded in maritime collision cases.

I

Respondents are the owner and the insurers of the *E. M. Ford,* a ship that sank in Milwaukee's outer harbor on Christmas Eve 1979. At the time of this disaster, the *Ford* was berthed in a slip owned by the city of Milwaukee (City). In the course of a severe storm, she broke loose from her moorings, battered against the headwall of the slip, took on water, and sank. She was subsequently raised and repaired.

In 1980 the *Ford*'s owner, the Cement Division of National Gypsum Co. (National Gypsum), brought suit against the City, invoking the District Court's admiralty and maritime

jurisdiction.[1]  The complaint alleged that the City had breached its duty as a wharfinger by assigning the vessel to a berthing slip known to be unsafe in heavy winds and by failing to give adequate warning of hidden dangers in the slip.  The plaintiff sought damages of $4.5 million, later increased to $6.5 million.  The City denied fault and filed a $250,000 counterclaim for damage to its dock.  The City alleged that National Gypsum was negligent in leaving the ship virtually unmanned in winter, with no means aboard for monitoring weather conditions or summoning help.

In 1986 the District Court conducted a 3-week trial on the issue of liability.  Finding that both National Gypsum and the City had been negligent, the court determined that the owner bore 96% of the responsibility for the disaster, while the City bore 4% of the fault.  Given the disparity in the parties' damages, a final judgment giving effect to that allocation (and awarding the damages sought in the pleadings) would have essentially left each party to bear its own losses.

Respondents took an interlocutory appeal from the District Court's ruling.[2]  The Court of Appeals for the Seventh Circuit agreed with the District Court's conclusion that both parties were at fault, and that the owner's negligence was "more egregious" than the City's, but it rejected the allocation of 96% of the responsibility to the owner as clearly erroneous.  *Cement Div., National Gypsum Co. v. Milwaukee*, 915 F. 2d 1154, 1159 (1990), cert. denied, 499 U. S. 960 (1991).  After making its own analysis of the record, the Court of

---

[1] "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."  28 U. S. C. § 1333(1).

[2] Such appeals are authorized by 28 U. S. C. § 1292(a)(3), which states: "(a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from: . . . (3) Interlocutory decrees of . . . district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed."

Appeals apportioned liability two-thirds to National Gypsum and one-third to the City. 915 F. 2d, at 1160.

Thereafter the parties entered into a partial settlement fixing respondents' damages, excluding prejudgment interest, at $1,677,541.86.[3] The parties agreed that any claim for interest would be submitted to the District Court for decision. A partial judgment for the stipulated amount was entered and satisfied.

Respondents then sought an award of over $5.3 million in prejudgment interest.[4] The District Court denied respondents' request. It noted that "an award of prejudgment interest calculated from the date of the loss is the rule rather than the exception in cases brought under a district court's admiralty jurisdiction," App. to Pet. for Cert. 21a, but held that special circumstances justified a departure from that rule in this case. The court explained:

> "In the instant case the record shows that from the outset there has been a genuine dispute over [respondents'] good faith claim that the City of Milwaukee was negligent for failing to warn the agents of [National

---

[3] In arriving at this sum, the parties agreed that respondents' damages were slightly more than $5.4 million, while the City's damages were just over $192,000. The parties multiplied respondents' damages by one-third, resulting in a subtotal of $1,805,829.98 for which the City was responsible. From this subtotal, the parties subtracted two-thirds of the City's damages, or $128,288.12, as an offset because that was the amount of National Gypsum's responsibility. The difference was the City's obligation to respondents. App. 40–45.

[4] This figure was based on respondents' assertion that prejudgment interest should be compounded continuously, from the time of the sinking of the *Ford*, at the commercial prime rate of interest averaged over the period of assessment. Plaintiff's Brief on Issue of Prejudgment Interest in No. 80–C–1001 (ED Wis.), pp. 24–26. The District Court did not express any view on the correctness of this analysis, nor do we. We merely note in passing that the discrepancy between the damages award and the interest sought by National Gypsum is in some measure attributable to the delays that have plagued this litigation—a factor that does not appear to be traceable to the fault of any party.

Gypsum] (who were planning to leave the FORD un-
manned during the Christmas holidays) that a winter
storm could create conditions in the outer harbor at Mil-
waukee which could damage the ship. The trial court
and the court of appeals both found mutual fault for the
damage which ensued to the ship and to the [City's]
dock. The court of appeals ascribed two-thirds of the
negligence to [National Gypsum]. Thus, in this situa-
tion the court concludes that [National Gypsum's] con-
tributory negligence was of such magnitude that an
award of prejudgment interest would be inequitable."
*Id.*, at 22a.[5]

The Court of Appeals reversed. 31 F. 3d 581 (1994). It
noted that prior to this Court's announcement of the compar-
ative fault rule in *United States* v. *Reliable Transfer Co.*, 421
U. S. 397 (1975), some courts had denied prejudgment inter-
est in order to mitigate the harsh effects of the earlier rule
commanding an equal division of damages whenever a colli-
sion resulted from the fault of both parties, even though one
party was only slightly negligent. In the court's view, how-
ever, after the divided damages rule was "thrown over-
board" and replaced with comparative fault, mutual fault
could no longer provide a basis for denying prejudgment in-
terest. 31 F. 3d, at 584–585. The Court of Appeals also
read our decision in *West Virginia* v. *United States*, 479 U. S.
305, 311, n. 3 (1987), as disapproving of a "balancing of the
equities" as a method of deciding whether to allow prejudg-
ment interest. 31 F. 3d, at 585.

The Court of Appeals' decision deepened an existing Cir-
cuit split regarding the criteria for denying prejudgment in-
terest in maritime collision cases. Compare, *e. g., Inland*

---

[5] The District Court also relied on the City's status as a municipality as
an alternative ground for denying prejudgment interest. App. to Pet. for
Cert. 22a–23a. The Court of Appeals rejected this portion of the District
Court's analysis as inconsistent with Circuit precedent, and the City did
not pursue the argument in this Court.

*Oil & Transport Co.* v. *Ark-White Towing Co.*, 696 F. 2d 321 (CA5 1983) (genuine dispute over good-faith claim in mutual fault setting justifies denial of prejudgment interest), with *Alkmeon Naviera, S. A.* v. *M/V Marina L,* 633 F. 2d 789 (CA9 1980) (contrary rule). We granted certiorari, 513 U. S. 1072 (1995), and now affirm.

## II

Although Congress has enacted a statute governing the award of postjudgment interest in federal court litigation, see 28 U. S. C. § 1961, there is no comparable legislation regarding prejudgment interest. Far from indicating a legislative determination that prejudgment interest should not be awarded, however, the absence of a statute merely indicates that the question is governed by traditional judge-made principles. *Monessen Southwestern R. Co.* v. *Morgan,* 486 U. S. 330, 336–337 (1988); *Rodgers* v. *United States,* 332 U. S. 371, 373 (1947). Those principles are well developed in admiralty, where "the Judiciary has traditionally taken the lead in formulating flexible and fair remedies." *Reliable Transfer,* 421 U. S., at 409.

Throughout our history, admiralty decrees have included provisions for prejudgment interest. In *Del Col* v. *Arnold,* 3 Dall. 333, a prize case decided in 1796, we affirmed a decree awarding the libellant interest from "the day of capture." *Id.,* at 334. In *The Amiable Nancy,* 3 Wheat. 546 (1818), we considered a similar decree. In augmenting the damages awarded by the lower court, we directed that the additional funds should bear prejudgment interest, as had the damages already awarded by the lower court. *Id.,* at 562–563. *The Amiable Nancy* arose out of the "gross and wanton" seizure of a Haitian vessel near the island of Antigua by the *Scourge,* an American privateer. *Id.,* at 546–547, 558. In his opinion for the Court, Justice Story explained that even though the "loss of the supposed profits" of the *Amiable Nancy*'s voyage was not recoverable, "the prime cost, or value of the prop-

erty lost, at the time of the loss, and in case of injury, the diminution in value, by reason of the injury, *with interest upon such valuation*, afforded the true measure for assessing damages." *Id.*, at 560 (emphasis added). We applied the same rule in *The Umbria*, 166 U. S. 404, 421 (1897), explaining that "in cases of total loss by collision damages are limited to the value of the vessel, *with interest thereon*, and the net freight pending at the time of the collision." (Emphasis added.)[6]

The Courts of Appeals have consistently and correctly construed decisions such as these as establishing a general rule that prejudgment interest should be awarded in maritime collision cases, subject to a limited exception for "peculiar" or "exceptional" circumstances. See, *e. g.*, *Inland Oil & Transport Co.*, 696 F. 2d, at 327; *Central Rivers Towing, Inc.* v. *Beardstown*, 750 F. 2d 565, 574 (CA7 1984); *Ohio River Co.* v. *Peavey Co.*, 731 F. 2d 547, 549 (CA8 1984); *Alkmeon Naviera*, 633 F. 2d, at 797; *Parker Towing Co.* v. *Yazoo River Towing, Inc.*, 794 F. 2d 591, 594 (CA11 1986).

The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss.[7] Full compensation has long been recognized as a

---

[6] See also *The Anna Maria*, 2 Wheat. 327, 335 (1817) (Marshall, C. J.) (remanding with instructions to ascertain damages suffered by the libellants, "in doing which, the value of the vessel, and the prime cost of the cargo, with all charges, and the premium of insurance, where it has been paid, *with interest*, are to be allowed") (emphasis added); *The Manitoba*, 122 U. S. 97, 101 (1887) (approving, in dicta, allowance of "interest on the damages from the date of the collision to the date of the decree").

[7] We have recognized the compensatory nature of prejudgment interest in a number of cases decided outside the admiralty context. *E. g.*, *West Virginia* v. *United States*, 479 U. S. 305, 310–311, n. 2 (1987); *Funkhouser* v. *J. B. Preston Co.*, 290 U. S. 163, 168 (1933); *Miller* v. *Robertson*, 266 U. S. 243, 257–258 (1924). But cf. *Blau* v. *Lehman*, 368 U. S. 403, 414 (1962) ("'interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness'") (quoting *Board of Comm'rs of Jackson Cty.* v. *United States*, 308 U. S. 343, 352 (1939)).

basic principle of admiralty law, where *"[r]estitutio in integrum* is the leading maxim applied by admiralty courts to ascertain damages resulting from a collision." *Standard Oil Co. of N. J.* v. *Southern Pacific Co.*, 268 U. S. 146, 158 (1925) (citing *The Baltimore*, 8 Wall. 377, 385 (1869)). By compensating "for the loss of use of money due as damages from the time the claim accrues until judgment is entered," *West Virginia*, 479 U. S., at 310–311, n. 2, an award of prejudgment interest helps achieve the goal of restoring a party to the condition it enjoyed before the injury occurred, *The President Madison*, 91 F. 2d 835, 845–846 (CA9 1937).

Despite admiralty's traditional hospitality to prejudgment interest, however, such an award has never been automatic. In *The Scotland*, 118 U. S. 507, 518–519 (1886), we stated that the "allowance of interest on damages is not an absolute right. Whether it ought or ought not to be allowed depends upon the circumstances of each case, and rests very much in the discretion of the tribunal which has to pass upon the subject, whether it be a court or a jury." See also *The Maggie J. Smith*, 123 U. S. 349, 356 (1887). Although we have never attempted to exhaustively catalog the circumstances that will justify the denial of interest, and do not do so today,[8] the most obvious example is the plaintiff's responsibility for "undue delay in prosecuting the lawsuit." *General Motors Corp.* v. *Devex Corp.*, 461 U. S. 648, 657 (1983). Other circumstances may appropriately be invoked as warranted by the facts of particular cases.

In this case, the City asks us to characterize two features of the instant litigation as sufficiently unusual to justify a departure from the general rule that prejudgment interest should be awarded to make the injured party whole. First, the City stresses the fact that there was a good-faith dispute

---

[8] We do note that, as is always the case when an issue is committed to judicial discretion, the judge's decision must be supported by a circumstance that has relevance to the issue at hand. See generally Friendly, Indiscretion About Discretion, 31 Emory L. J. 747 (1982).

over its liability for respondents' loss. In our view, however, this fact carries little weight. If interest were awarded as a penalty for bad-faith conduct of the litigation, the City's argument would be well taken. But prejudgment interest is not awarded as a penalty; it is merely an element of just compensation.

The City's "good-faith" argument has some resonance with the venerable common-law rule that prejudgment interest is not awarded on unliquidated claims (those where the precise amount of damages at issue cannot be computed). If a party contests liability in good faith, it will usually be the case that the party's ultimate exposure is uncertain. But the liquidated/unliquidated distinction has faced trenchant criticism for a number of years.[9] Moreover, that distinction "has never become so firmly entrenched in admiralty as it has been at law." *Moore-McCormack Lines, Inc.* v. *Richardson,* 295 F. 2d 583, 592 (CA2 1961).[10] Any fixed rule allowing prejudgment interest only on liquidated claims would be difficult, if not impossible, to reconcile with admiralty's traditional presumption. Yet unless we were willing to adopt such a rule—which we are not—uncertainty about the outcome of a case should not preclude an award of interest.

---

[9] "It has been recognized that a distinction, in this respect, simply as between cases of liquidated and unliquidated damages, is not a sound one." *Funkhouser,* 290 U. S., at 168 (citing *Bernhard* v. *Rochester German Ins. Co.,* 79 Conn. 388, 398, 65 A. 134, 137–138 (1906); 1 T. Sedgwick, Measure of Damages § 315 (9th ed. 1912)). See also *General Motors Corp.* v. *Devex Corp.,* 461 U. S. 648, 655–656, n. 10 (1983); D. Dobbs, Law of Remedies § 3.6(3) (2d ed. 1993); C. McCormick, Law of Damages §§ 51, 54–56 (1935); Rothschild, Prejudgment Interest: Survey and Suggestion, 77 Nw. U. L. Rev. 192 (1982).

[10] A number of Circuits have rejected its applicability, at least as an absolute bar. *E. g., Borges* v. *Our Lady of the Sea Corp.,* 935 F. 2d 436, 444 (CA1 1991); *Hillier* v. *Southern Towing Co.,* 740 F. 2d 583, 586 (CA7 1984), cert. denied, 469 U. S. 1190 (1985); *Norfolk Shipbuilding & Drydock Corp.* v. *M/Y La Belle Simone,* 537 F. 2d 1201, 1204–1205, and n. 1 (CA4 1976); *Moore-McCormack Lines, Inc.* v. *Richardson,* 295 F. 2d, at 594.

In sum, the existence of a legitimate difference of opinion on the issue of liability is merely a characteristic of most ordinary lawsuits. It is not an extraordinary circumstance that can justify denying prejudgment interest. See *Alkmeon Naviera*, 633 F. 2d, at 798.

The second purportedly "peculiar" feature of this case is the magnitude of the plaintiff's fault. Leaving aside the empirical question whether such a division of fault is in fact an aberration, it is true in this case that the owner of the *E. M. Ford* was primarily responsible for the vessel's loss. As a result, it might appear somewhat inequitable to award a large sum in prejudgment interest against a relatively innocent party. But any unfairness is illusory, because the relative fault of the parties has already been taken into consideration in calculating the amount of the loss for which the City is responsible.

In *United States* v. *Reliable Transfer Co.*, 421 U. S. 397 (1975), we "replaced the divided damages rule, which required an equal division of property damage whatever the relative degree of fault may have been, with a rule requiring that damages be assessed on the basis of proportionate fault when such an allocation can reasonably be made." *McDermott, Inc.* v. *AmClyde*, 511 U. S. 202, 207 (1994). Thus, in this case, before prejudgment interest even entered the picture, the total amount of respondents' recovery had already been reduced by two-thirds because of National Gypsum's own negligence. The City's responsibility for the remaining one-third is no different than if it had performed the same negligent acts and the owner, instead of also being negligent, had engaged in heroic maneuvers that avoided two-thirds of the damages. The City is merely required to compensate the owner for the loss for which the City is responsible.[11]

---

[11] Indeed, although the amount is relatively small in this case, the City's counterclaim was resolved under the same principle. Notwithstanding its contributory negligence, the City has been compensated for two-thirds of its cost of repairing the dock and headwall. See n. 3, *supra*.

In light of *Reliable Transfer*, we are unmoved by the City's contention that an award of prejudgment interest is inequitable in a mutual fault situation. Indeed, the converse is true: a *denial* of prejudgment interest would be unfair. As JUSTICE KENNEDY noted while he was sitting on the Ninth Circuit, "under any rule allowing apportionment of liability, denying prejudgment interest on the basis of mutual fault would seem to penalize a party twice for the same mistake." *Alkmeon Naviera*, 633 F. 2d, at 798, n. 12. Such a double penalty is commended neither by logic nor by fairness; the rule giving rise to it is a relic of history that has ceased to serve any purpose in the wake of *Reliable Transfer*.

Accordingly, we hold that neither a good-faith dispute over liability nor the existence of mutual fault justifies the denial of prejudgment interest in an admiralty collision case. Questions related to the calculation of the prejudgment interest award, including the rate to be applied, have not been raised in this Court and remain open for consideration, in the first instance, by the District Court.

The judgment of the Court of Appeals is

*Affirmed.*

JUSTICE BREYER took no part in the consideration or decision of this case.