167 F.3d 880
 22 Employee Benefits Cas. 2441,
Pens. Plan Guide (CCH) P 23,951H
Pamela Kelly FOX, Plaintiff-Appellee,
v.
Arthur Victor FOX, Individually and as Plan Administrator,
Defendant-Appellant.
Pamela Kelly Fox, Plaintiff-Appellee,
v.
Arthur Victor Fox, Individually and as Plan Administrator,
Defendant-Appellant.
 Nos. 97-2705, 98-1801.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 2, 1998.
Decided Feb. 12, 1999.
 
 ARGUED: Diana Marjorie Savit, Mendelsohn & Szymkowicz, Washington, D.C., for Appellant. Kristine Kappeler Howanski, Jonathan S. Greene, Semmes, Bowen & Semmes, Towson, Maryland, for Appellee. ON BRIEF: Marvin L. Szymkowicz, Mendelsohn & Szymkowicz, Washington, D.C.; Earl L. Metheny, Metheny & Miller, L.L.P., Washington, D.C., for Appellant.
 Before WILKINSON, Chief Judge, MURNAGHAN, Circuit Judge, and HERLONG, United States District Judge for the District of South Carolina, sitting by designation.
 Affirmed by published opinion. Chief Judge WILKINSON wrote the opinion, in which Judge MURNAGHAN and Judge HERLING joined.
 OPINION
 WILKINSON, Chief Judge:
 
 
 1
 Pamela Kelly Fox brought suit to recover funds in her ex-husband's profit-sharing and retirement plans that were awarded to her in Maryland divorce proceedings. Her former husband, Arthur Victor Fox, as administrator of those plans, denied her request to qualify a state domestic relations order for payment under ERISA, 29 U.S.C. § 1056(d)(3). The district court held that Mr. Fox acted unreasonably in denying Ms. Fox's request for payment. We affirm.
 
 I.
 
 2
 This case is the culmination of a decade of post-divorce proceedings involving Mr. and Ms. Fox. The Foxes were married in 1974 and were granted a divorce in 1989 in Maryland. During the divorce proceedings, the Maryland courts determined the respective interests of Mr. and Ms. Fox in Chem-Met, a company owned by Mr. Fox. Mr.Fox served as the company's president and he administered Chem-Met's retirement and profit-sharing plans. He also was a beneficiary of those plans.
 
 
 3
 As part of the divorce judgment, the state circuit court awarded Ms. Fox $112,439 from the profit-sharing plan and $135,057 from the retirement plan. Because the plans were governed by ERISA, the monies could only be paid to Ms. Fox if a court with jurisdiction issued a domestic relations order (DRO) that the plan administrator could qualify as meeting ERISA's requirements. See 29 U.S.C. § 1056(d)(3). Such a qualified DRO is known as a QDRO. With the help of Earl Metheny, Chem-Met's employee benefits counsel, the Foxes' attorneys drafted a DRO, which was signed by a Maryland circuit court in 1989 (1989 DRO). The parties both appealed various aspects of the divorce judgment to the Maryland Court of Special Appeals.
 
 
 4
 While the case was on appeal, Ms. Fox presented the 1989 DRO to Chem-Met's plan administrator, Mr. Fox, for payment. Ms. Fox was permitted to choose from the plans' four payment options: lump-sum, installment payments, annuity, or leaving the money in the plan. Ms. Fox elected a lump sum and was paid in May 1990.
 
 
 5
 In January 1991, the Maryland Court of Special Appeals directed the circuit court to reevaluate the amount awarded to Ms. Fox from the two Chem-Met plans using a later valuation date. Fox v. Fox, 584 A.2d 128, 134-35 (Md.Ct.Spec.App.1991). On remand, the circuit court determined that Ms. Fox was entitled to an additional $17,521 from the profit-sharing plan and $18,439 from the retirement plan. Again the attorneys for the Foxes turned to Metheny for help in drafting a DRO. The parties drafted a DRO that was virtually identical to the 1989 DRO and submitted it to the circuit court. The court issued this DRO in November 1991 (1991 DRO).
 
 
 6
 In December 1991 Ms. Fox submitted the 1991 DRO to Mr. Fox as the plans' administrator. After much delay, Mr. Fox as administrator refused to qualify the 1991 DRO. He asserted that the prior lump sum payment precluded any additional payments because lump sum means one or more payments within a single tax year. He thus concluded that the proposed DRO violated 29 U.S.C. § 1056(d)(3)(D) because it directed the plans to provide a form of payment that the plans did not permit. Ms. Fox promptly requested reconsideration and Metheny, on Chem-Met's behalf, affirmed the denial in May 1995.
 
 
 7
 Ms. Fox filed suit against Mr. Fox individually and as the administrator of the Chem-Met plans in Maryland state court. She prayed for relief in the form of the $35,961--the amount awarded in the 1991 DRO--and prejudgment and post-judgment interest. Mr. Fox removed the case to federal court and filed a counterclaim seeking a declaratory judgment that his refusal to qualify the 1991 DRO was a permissible exercise of his discretion under ERISA.
 
 
 8
 The district court granted summary judgment to Ms. Fox on October 30, 1997. The court noted that because of the personal animosity between the parties and Mr. Fox's personal stake in the outcome, Mr. Fox's ERISA determination should be subjected to closer scrutiny. The district court held that Mr. Fox's definition of lump sum was unreasonable because it precluded compliance with a state court order and would reduce Ms. Fox's fair share of benefits. The court imposed a constructive trust for Ms. Fox's benefit on the monies being held in the two plans. The court awarded her $35,961, plus interest, costs, and attorneys' fees. The district court subsequently awarded prejudgment interest at a rate of 12% per annum. Mr. Fox appeals.
 
 II.
 
 9
 Under ERISA, a plan administrator may not qualify a DRO if that order requires "a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan." 29 U.S.C. § 1056(d)(3)(D)(i). Mr. Fox concedes that the Chem-Met plans permit the payment of a lump sum, but contends that Ms. Fox's requested payments are not lump sums because they require a second payment on top of the payments made pursuant to the 1989 DRO. Borrowing from federal tax law, Mr. Fox asserts that lump sum means "the distribution or payment within one taxable year of the recipient of the balance to the credit of an employee." I.R.C. § 402(e)(4)(A). Because payment under the 1991 DRO would occur in a different tax year from the distributions made under the 1989 DRO, Mr. Fox argues that such payments are not lump sum payments. Mr. Fox further argues that he did not abuse his discretion in deciding that the plans do not offer the "form of benefit" requested by Ms. Fox--essentially a two-payment option.
 
 
 10
 We review Mr. Fox's determination under the standards set forth in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In Bruch, the Supreme Court held that the decisions of administrators who have been delegated the power to construe disputed terms "will not be disturbed if reasonable." Id. at 111, 109 S.Ct. 948; see also de Nobel v. Vitro Corp., 885 F.2d 1180, 1185-86 (4th Cir.1989). Additionally, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." Bruch, 489 U.S. at 115, 109 S.Ct. 948 (internal quotation marks omitted); see also Doe v. Group Hospitalization & Med. Servs., 3 F.3d 80, 87 (4th Cir.1993) ("[D]eference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict.").
 
 
 11
 Here, the parties agree that the plans delegate to Mr. Fox discretion to interpret the meaning of disputed terms. The question remains whether Mr. Fox's interpretation is reasonable. We hold that it is not.
 
 
 12
 We are mindful that QDROs are a limited exception to ERISA's general requirement "that benefits provided under [a pension] plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). ERISA delegates to plan administrators the power to qualify state DROs. Id. § 1056(d)(3)(G). In exercising this power, however, Mr. Fox abused his discretion to construe the meaning of an ambiguous plan term. While it is true that a lump sum payment is generally a single payment, in this case a Maryland appellate court determined that an error had been made in calculating Ms. Fox's rightful share of the couple's property in 1989. Fox, 584 A.2d at 134 (requiring the trial "court to redetermine the values of th[e] plans as of the date of the divorce"). A state court order correcting that error followed. The 1991 DRO does not call for a new "form of benefit" but instead simply seeks to secure Ms. Fox's just share of benefits by correcting an earlier miscalculation, one that used the wrong date to value Ms. Fox's shares in the plans.
 
 
 13
 It is questionable as a general matter whether the lump sum limitations set forth in the Internal Revenue Code even apply to QDROs. See I.R.C. § 402(e)(4)(M) (excepting amounts payable under a QDRO from the definition of lump sum). Be that as it may, those limitations certainly do not foreclose the additional payment in this case. If they did, no plan administrator could ever make an additional payment to a plan beneficiary to correct an error because such a payment would be regarded as a prohibited second payment. What Ms. Fox seeks is not an impermissible second payment but the amount she was entitled to in the first place. It is patently unreasonable for an administrator to adopt a definition of lump sum that prevents the correction of such calculation errors. Mr. Fox's rigid definition loses sight of the mission of these ERISA plans--"to protect ... the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b). Mr. Fox ignored this end and the state court order. Thus the district court correctly ruled that the 1991 DRO was a QDRO.
 
 III.
 
 14
 Mr. Fox also assigns multiple errors to the district court's grant of relief. First, Mr. Fox argues that the district court improperly imposed a constructive trust on the funds because there was no allegation that he wrongly acquired the funds in question. Constructive trust remedies, however, are not limited to unjust acquisitions; they also extend to inequitable retentions. "Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises." Restatement of Restitution § 160 (1937)(emphasis added). Here, the district court did not abuse its discretion by imposing a constructive trust on plan funds unreasonably withheld from an ex-wife by a self-interested plan administrator.
 
 
 15
 Second, Mr. Fox challenges the district court's grant of prejudgment interest. Ms. Fox requested an award of prejudgment interest in her complaint and the district court's summary judgment order, dated October 30, 1997, imposed a constructive trust in the amount of $35,961, "plus interest." Still, Mr. Fox argues that the October 30 order's use of the term "interest" referred to post-judgment interest alone and that the district court's later award of prejudgment interest was untimely. We disagree. To the extent that the term "interest" was ambiguous in the October 30 order, "[i]t is peculiarly within the province of the district court ... to determine the meaning of its own order." Home Port Rentals, Inc. v. Ruben, 957 F.2d 126, 131 (4th Cir.1992). In light of the request for prejudgment interest in the complaint, the district court was well within its discretion to decide that the term "interest" included prejudgment interest.
 
 
 16
 Finally, Mr. Fox claims that the district court's award of 12% prejudgment interest was too high. He argues that because the funds in question were properly segregated according to 29 U.S.C. § 1056(d)(3)(H), and earned a rate of return similar to the rest of the Chem-Met plan funds (approximately 6.5% per annum), the court should have awarded prejudgment interest at this 6.5% rate.
 
 
 17
 Federal law controls the issuance of prejudgment interest awarded on federal claims. See City of Milwaukee v. Cement Div., Nat'l Gypsum Co., 515 U.S. 189, 194, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995). "ERISA does not specifically provide for prejudgment interest, and absent a statutory mandate the award of prejudgment interest is discretionary with the trial court ....The rate of prejudgment interest for cases involving federal questions is a matter left to the discretion of the district court." Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1030-31 (4th Cir.1993) (enbanc). "The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss." City of Milwaukee, 515 U.S. at 195, 115 S.Ct. 2091. In this case, the district court took notice of the S & P 500's 19% per annum rise from February 1992 to September 1997 and noted that an administrator had a duty to make investments with a reasonable rate of return. Because a prudent administrator would invest in a balanced portfolio, the court then chose 12% as a reasonable rate of prejudgment interest. Although 12% is high, we cannot say that in this case the district court abused its discretion. See Quesinberry, 987 F.2d at 1031 (noting that district court in ERISA case borrowed state rate of 12% in awarding prejudgment interest).
 
 IV.
 
 18
 For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.