**In re PG INDUSTRIES, INC., Debtor.**

**David R. Dubois, Plaintiff,**

**v.**

**Ozinga Indiana RMC, Inc., Defendant.**

**Bankruptcy No. 03–64667 JPK.**
**Adversary No. 05–6204.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

Jan. 11, 2006.

766

William M. Jonelis, Munster, IN, for Chapter 7 Trustee, for Plaintiff.

## ORDER REGARDING MOTION FOR DEFAULT JUDGMENT

J. PHILIP KLINGEBERGER, Bankruptcy Judge.

On December 12, 2005, the plaintiff, by counsel, filed a Verified Motion for Default Judgment with respect to the claims asserted against the defendant in this case

under 11 U.S.C. § 547(b). In that motion, the plaintiff requests an award of prejudgment interest. The Court finds that the record is insufficient at this time to determine the amount of prejudgment interest to be awarded to the plaintiff.

In an action under 11 U.S.C. § 547(b), bankruptcy courts have discretion as to whether or not prejudgment interest should be awarded to a successful plaintiff; *In re Bergner & Co.*, 140 F.3d 1111 (7th Cir.1998); *In re Milwaukee Cheese Wisconsin, Incorporated*, 112 F.3d 845 (7th Cir.1997). However, as stated in *Milwaukee Cheese Wisconsin:*

Likewise we must reject the invitation to rescind Judge Clevert's order that the recipients of the preferential transfers repay with interest. Doubtless judges have discretion to exercise when deciding whether to award prejudgment interest-more discretion than they possess when deciding whether to avoid a preferential transfer. Discretion is not, however, authorization to decide who deserves the money more. Discretion must be exercised according to law, which means that prejudgment interest should be awarded unless there is a sound reason not to do so. The only reason appellants give why discretion should have been exercised in their favor is that the case has lasted a long time, so interest has mounted; an award now, they say, would be "punitive." This misunderstands why courts award prejudgment interest. Compensation deferred is compensation reduced by the time value of money; if the proceeds had been returned to Milwaukee Cheese's estate and distributed to the creditors, they would have been able to earn interest on it during the last decade. That is why prejudgment interest is an ingredient of full compensation. It is also why an award, no matter how

large, cannot be called "punitive": defendants can invest the funds while the litigation proceeds, then use the interest they receive to satisfy the obligation. Delay is a reason to award interest, not to avoid interest; the longer the case lasts, the more of the stakes the defendant keeps even if it loses (and the less the victorious plaintiff receives), unless interest is added. *Milwaukee v. Cement Division of National Gypsum Co.*, 515 U.S. 189, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995); *In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1331–35 (7th Cir. 1992). Gratuitous delay by the party seeking the award-delay that injures the other side by forcing it to act as an uncompensated trustee or investment manager-might be a reason to limit an award of interest. See *Cement Division*, 515 U.S. at 196, 115 S.Ct. at 2096. But the delay here is attributable to the judicial branch, and its effect is neutral between the parties. Unfortunate though it is that this case has lasted as long as the *Amoco Cadiz* litigation (which involved litigants from four continents and hundreds of millions of dollars in claims), an award of prejudgment interest still restores the parties to the positions they would have occupied had this case concluded in the 1980s rather than the 1990s.

112 F.3d at 849. The foregoing direction to federal courts in the Seventh Circuit to award prejudgment interest as the rule rather than as the exception is essentially a reiteration of the determination previously made in *Gorenstein Enterprises, Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431, 436 (7th Cir.1989), which stated:

While the statute makes no reference to prejudgment interest, the Gorensteins do not question that federal common law authorizes the award of such interest in appropriate cases to victims of violations

of federal law. See, e.g., *West Virginia v. United States*, 479 U.S. 305, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987); *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983); *Rodgers v. United States*, 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3 (1947); *Williamson v. Handy Button Machine Co.*, 817 F.2d 1290, 1297–99 (7th Cir. 1987); *Central Rivers Towing, Inc. v. City of Beardstown*, 750 F.2d 565, 574 (7th Cir.1984); *Hillier v. Southern Towing Co.*, 740 F.2d 583 (7th Cir.1984); *Myron v. Chicoine*, 678 F.2d 727, 733–34 (7th Cir.1982); *Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988 (6th Cir.1982); *L.P. Larson, Jr., Co. v. William Wrigley, Jr., Co.*, 20 F.2d 830, 836 (7th Cir.1927)—the last a trademark case. The areas in which such interest is allowed, illustrated by the cases just cited, are diverse. The time has come, we think, to generalize, and to announce a rule that prejudgment interest should be presumptively available to victims of federal law violations. Without it, compensation of the plaintiff is incomplete and the defendant has an incentive to delay.

Based upon the foregoing, the Court finds that the plaintiff is entitled to an award of prejudgment interest in this 11 U.S.C. § 547(b) action.

 The next question which arises is the rate at which interest is to be imposed. As stated in *Cement Division, National Gypsum Co. v. City of Milwaukee*, 144 F.3d 1111, 1114 (7th Cir.1998):

Unlike postjudgment interest, there is no statutory rate of prejudgment interest, *see Gorenstein Enters. v. Quality Care–U.S.A., Inc.*, 874 F.2d 431, 436 (7th Cir.1989), and the amount of prejudgment interest required to properly compensate the victim can vary depending on the particular circumstances of the

case. Accordingly, we entrusted the details of the calculation to the discretion of the district court, *see* 31 F.3d at 587, and our review is limited to whether the district court has reasonably applied the appropriate federal common law principles-including the guidance provided by our previous opinion. *See United States v. Taylor*, 487 U.S. 326, 336, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988); *Cook v. Niedert*, 142 F.3d 1004, 1011 (7th Cir. 1998). In our opinion remanding for determination of prejudgment interest, we indicated that "the best starting point is to award interest at the market rate, which means an average of the *prime rate* for the years in question." 31 F.3d at 587 (emphasis added).

The foregoing statement was made more conclusive in *First National Bank of Chicago v. Standard Bank & Trust*, 172 F.3d 472, 480 (7th Cir.1999), as follows:

> Our practice has been to use the prime rate as the benchmark for prejudgment interest unless either there is a statutorily defined rate or the district court engages in "refined rate-setting" directed at determining a more accurate market rate for interest. *Cement Division, National Gypsum Co. v. City of Milwaukee*, 144 F.3d 1111, 1114 (7th Cir. 1998); *In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1332 (7th Cir. 1992). We hold today that to set aside this practice and award something other than the prime rate is an abuse of discretion, unless the district court engages in such a refined calculation.

Thus, the proper rate of interest is to be calculated as the average of the *prime rate* for the years in question. The "prime rate" is that reported by the Federal Reserve Board; *see, Till v. SCS Credit Corporation*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004). However, the concept of "average prime rate" has not been de-

lineated by the United States Court of Appeals for the Seventh Circuit, except to the extent that it is deemed to be "an award of prejudgment interest consistent with the average prime rate for the appropriate time period", *First National Bank of Chicago v. `Standard Bank & Trust, supra*, at 481. The applicable prime rate varies throughout time, and it can rise or fall depending upon the impact of monetary policies established by the Federal Reserve Board. The appropriate manner of calculation is clearly *not* applying the prime rate established for a particular time frame to the amount of the preference recovery to obtain the amount of interest accruing in that time frame, and consecutively making a similar calculation for each discrete time period in which a particular prime rate was in effect to obtain a sum of interest. That is not an average. An alternative formula would be to ascertain the prime rate at the beginning of the applicable calculation period (which will be subsequently stated in this decision), ascertain the applicable prime rate on the date of entry of judgment, and simply divide by two. Because of the vaccillatory nature of the prime rate, this cannot generate any kind of meaningful average. The Court determines that the manner of calculating the "average prime rate" is to add together all of the separate prime rates established throughout the relevant time frame, and then to divide the sum of that computation by the number of separate prime rates which were added together to determine that sum.

■ Finally, the relevant period for the accrual of prejudgment interest must be determined. There is no controlling Seventh Circuit precedent on this issue, and as one might expect there is a divergence of opinion in courts throughout the country as to the beginning date for accrual of

prejudgment interest in a § 547(b) case. The Court adopts what is in essence the majority rule. The beginning date for accrual of prejudgment interest is the date of the demand for return of the preferential transfer made by the Trustee to the defendant; *In re Cybermech, Incorporated,* 13 F.3d 818, 822 (4th Cir.1994); in the event no pre-complaint demand was made, then the beginning of the accrual period is the date of filing the complaint in the adversary proceeding; *In re Schwinn Bicycle Co.,* 205 B.R. 557, 574 (Bankr.N.D.Ill.1997).

The record in this case does not disclose whether or not a demand was made by the Trustee of the defendant prior to the filing of the complaint which initiated this adversary proceeding. In order for the Court to determine the amount to be awarded as prejudgment interest, it is necessary to determine whether a demand was made prior to the initiation of the case.

IT IS ORDERED that within 20 days of the date of entry of this order, the plaintiff shall file a supplemental affidavit in support of his motion for default judgment which establishes whether or not a written demand was made by him prior to the filing of the complaint in this adversary proceeding, and if so, states the date upon which the written demand was deposited in the mail and attaches a copy of the document by which the demand was made.