# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 9, 2010

Lyle W. Cayce
Clerk

No. 09-30447

SEA LINK CARGO SERVICES INC.,

Plaintiff-Appellee Cross-Appellant

v.

MARINE CENTRE INC.,

Defendant-Appellant Cross-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:08-CV-1452

Before GARWOOD, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Both Sea Link Cargo Services Inc. ("Sea Link") and Marine Centre Inc. ("MCI") appeal the district court's judgment entered after a bench trial. We affirm in part, vacate in part, and remand.

This maritime contract dispute involves the subcharter of several barges. Sea Link chartered the vessels from Canal Barge Company ("Canal Barge") and subchartered them to MCI at a daily rate of $250 per barge.[1] MCI used the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The daily charter rate was later increased to $350 per barge.

vessels in the "mud trade" until they were damaged, after which MCI used them to haul pipe. Sea Link permitted MCI to ply the damaged barges in the "pipe trade" for about five months, and then recalled the barges pursuant to Section 9 of the charter party agreement,[2] though Sea Link allowed MCI to perform one more pipe transfer before returning the vessels.

Under Section 8 of the charter party agreement,[3] MCI was required to repair the vessels and return them to Sea Link in like condition once they were recalled. The agreement further provided that the vessels were to remain "on-hire status" until any repairs were completed to the satisfaction of the owner, Canal Barge Company. Due to complications with MCI's insurer,[4] the vessels were fleeted and were not repaired for several months. While the vessels were fleeted, MCI asked to use the vessels to haul pipe. Sea Link denied this request and continued to bill MCI the daily charter rate until the vessels were repaired. MCI did not pay, and Sea Link sued to recover the daily "on-hire" fee for this period. MCI counterclaimed, alleging, *inter alia*, that Sea Link breached the charter party agreement by not allowing it to use the barges while they were awaiting repair.

---

[2] "On-hire period - approx. Thirty days with five days [sic] notice of return."

[3] "Any damages to barges tendered while on-hire status will be the responsibility of MCI to return barges in like conditions as presented prior to on-hire status. If barges require repair, barges will remain on-hire status until repairs are completed to satisfaction of barge owners."

[4] MCI's insurer would not immediately release funds for the repairs because it determined that the extent of damages to the vessels made it likely that the barges would be considered a "constructive loss." MCI attributes this insurance hold up to Sea Link because Sea Link failed to inform it that the barges had increased in value. The district court concluded that any damage to the vessels predated the increase in the vessels' value and that there was no causal link between Sea Link's failure to inform MCI of the increased value and any insurance delays. MCI contests these findings on appeal but has not shown them to be clearly erroneous. *See In re Mid-South Towing Co.*, 418 F.3d 526, 531 (5th Cir. 2005) (stating that this court reviews factual determinations made in a bench trial for clear error).

No. 09-30447

After a bench trial, the district court found that Sea Link was entitled to $228,550 in unpaid daily charter hire payments less a $29,009.61 offset for unpaid towing services fees it owed MCI.  The court rejected MCI's argument that Sea Link failed to mitigate damages by not allowing MCI to use the barges while they were fleeted.  It denied each party's request for attorney's fees and awarded prejudgment interest to Sea Link from the date of judicial demand. Both parties appealed.

When reviewing a bench trial, we review factual determinations for clear error and legal issues de novo.  *In re Mid-South Towing Co.*, 418 F.3d 526, 531 (5th Cir. 2005).

The meaning of "on-hire" in Section 8 of the charter party agreement is the central dispute in this case.  Charter party agreements are subject to the general rules of contract interpretation.  *See Marine Overseas Servs., Inc. v. Crossocean Shipping Co.*, 791 F.2d 1227, 1234 (5th Cir. 1986).  MCI argues that "on-hire" is ambiguous and should be interpreted in its favor and against Sea Link, the drafter of the agreement.  According to MCI, "on-hire" could be interpreted to mean that while it is required to pay the daily charter fee, it is entitled to use the vessels. Because Sea Link would not allow MCI to use the vessels while they were fleeted, awaiting repair, MCI argues that Sea Link took the vessels "off-hire," or, in the alternative, that Sea Link breached its obligations under the charter party agreement during this time.

This is not a reasonable interpretation of "on-hire" that could be applied consistently throughout the agreement.  *See Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 n.6 (5th Cir. 2004) (stating that a charter party agreement is not ambiguous when it "can be given only one reasonable interpretation.").  MCI's interpretation fails to make sense of Section 8's provision that the vessels remain "on-hire status until repairs are completed." If "on-hire" means "available for use," then Section 8 would contradict itself; the

3

vessels cannot be undergoing repair work at a repair facility and be available for use at the same time. The better reading of the charter party agreement, adopted by the district court below, is that MCI's right to use the vessels ceased after Sea Link gave the required notice under Section 9, and that MCI was obligated to pay the daily charter rate until MCI had the vessels repaired to the condition they were in before the charter.[5] Unlike MCI's proffered interpretation, this reading harmonizes both Section 9's requirement that the "on-hire period" expires after Sea Link gives notice for return and Section 8's provision that the vessels remain "on-hire" until repairs are completed. *See Transco Exploration Co. v. Pac. Employers Ins., Co.*, 869 F.2d 862, 864 n.2 (5th Cir. 1989) (instructing that in contract interpretation, the court must, "where possible, construe the words so as to harmonize all while rendering none superfluous").

MCI's argument that Sea Link failed to mitigate its damages by not allowing MCI to use the vessels while they were fleeted essentially reasserts its claim that Sea Link breached the charter party agreement and relies on the same misreading of the "on-hire" provision. That Sea Link was required to mitigate its damages is uncontroverted. *See Domar Ocean Transp., Ltd. v. Indep. Refining* Co., 783 F.2d 1185, 1191 (5th Cir. 1986).[6] But permitting MCI to use the barges would not have mitigated Sea Link's damages. MCI actually complains that Sea Link failed to mitigate *MCI's* damages; MCI had to charter additional barges to replace the fleeted Sea Link vessels and is disgruntled that it had to pay charter fees for both sets of barges. Had Sea Link breached the

---

[5] MCI asserts that the district court erroneously relied on privileged attorney-client communications in reaching its interpretation of the "on-hire" provision. Even if the district court did rely on privileged statements, any error would be harmless. The district court's interpretation is the only reasonable interpretation of the agreement's plain language.

[6] *Domar* held that a "vessel owner," in this case analogous to Sea Link, the sub-charterer, "is required to mitigate damages and may not recover damages for losses resulting from [its] failure to use reasonable measures to halt the progress of damage." 783 F.2d at 1191 (quotation omitted).

charter party agreement, MCI's damages would be relevant. But, as noted, MCI's right to use the vessels ceased when Sea Link gave notice of return.

Both parties mistakenly argue that they are entitled to attorney's fees under the Louisiana Open Account Statute, LA. REV. STAT. § 9:2781. This is a maritime contract dispute, and "[m]aritime disputes generally are governed by the 'American Rule,' pursuant to which each party bears its own costs." *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 405 (5th Cir. 2003). We have previously held that a different state attorney's fees statute did not apply in a maritime case. *Id.* at 406. Neither party advances a persuasive reason to reach a different result in connection with the Louisiana Open Account Statute.

Finally, Sea Link correctly argues that the district court erred by awarding prejudgment interest from the date of judicial demand rather than from the date of its injury. "[I]n maritime cases the award of prejudgment interest is the rule, rather than the exception, and the trial court has discretion to deny prejudgment interest only where peculiar circumstances would make such an award inequitable." *Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.*, 71 F.3d 198, 204 (5th Cir. 1995). We recently identified the date of injury, rather than the date of judicial demand, as the proper date from which prejudgment interest should run. *See In re Signal Intern., LLC*, 579 F.3d 478, 500–01 (5th Cir. 2009). Awarding interest from the date that an injury occurred ensures that the injured party is fully compensated, which is the "essential rationale for awarding prejudgment interest." *City of Milwaukee v. Cement Div., Nat'l Gympsum Co.*, 515 U.S. 189, 204 (1995). Because, as the district court observed, "MCI in effect had free use of Sea Link's money during the time that it should have been paying for the daily charter hire," an award of interest from the date of injury is necessary for Sea Link to be fully compensated. As there were no peculiar

No. 09-30447

circumstances here, the district court abused its discretion by awarding prejudgment interest only from the date of judicial demand.

In conclusion, we AFFIRM the district court's judgment and damages award in favor of Sea Link. We also AFFIRM the district court's denial of attorney's fees. We VACATE the award of prejudgment interest and REMAND to the district court with instructions to award prejudgment interest in accordance with this opinion.

AFFIRMED in part, VACATED in part, and REMANDED.