307 F.Supp.2d 465 (2004)
In re AIR CRASH NEAR NANTUCKET ISLAND, MASSACHUSETTS, ON OCTOBER 31, 1999.
Mark Kowalsky, Personal Representative of the Estates of Larry and Edith Kowalsky, Plaintiff,
v.
Egyptair, Defendant.
Bernard Shapiro, Personal Representative of the Estates of Norman and Joan Shapiro, Plaintiff,
v.
EgyptAir, Defendant.
Nos. 00-MD-1344, 00-CV-5409, 00-CV-5410(FB).
United States District Court, E.D. New York.
March 9, 2004.
*466 David Rapoport, Esq., Rapoport Law Offices, P.C., Chicago, IL, for Plaintiffs.
Christopher Carlsen, Esq., Condon & Forsyth LLP, New York, NY, for Defendant.

MEMORANDUM AND ORDER
BLOCK, District Judge.
Plaintiffs Mark Kowalsky, personal representative of the estates of Edith and Larry Kowalsky, and Bernard Shapiro, personal representative of the estates of *467 Joan and Norman Shapiro, have brought suit seeking non-pecuniary damages pursuant to the Death on the High Seas Act ("DOHSA"), 46 U.S.C §§ 761-768. The two cases were consolidated for trial, which transpired on October 21, 2003. The following constitutes the Court's findings of fact and conclusions of law.

FINDINGS OF FACT
On October 31, 1999, Edith and Larry Kowalsky and Joan and Norman Shapiro were among the passengers on EgyptAir Flight 990, which was scheduled to travel from New York City to Cairo, Egypt. The two couples were traveling together on vacation. After departing from Kennedy International Airport, the aircraft crashed into the Atlantic Ocean in international waters, approximately sixty miles from Nantucket Island. There were no survivors.
At the time of the crash, Larry Kowalsky was 74, Edith Kowalsky 68. They were survived by four sons, Steven, Howard, Mark and Jeffrey, who were then 46, 44, 41 and 33, respectively. Norman Shapiro was 70, Joan Shapiro 64. They were survived by two sons and a daughter, Robert, Larry and Helene, who were then 40, 38 and 34, respectively. In addition, Joan Shapiro was survived by her mother, Frances Bonner, who passed away on March 15, 2002; Norman Shapiro was survived by both of his parents, Blanche and Joseph Shapiro, who passed away on August 7, 2000 and September 29, 2000, respectively. The parties agree that at the time of death Larry Kowalsky had a life expectancy of 10.7 years, Edith Kowalsky 17 years, Norman Shapiro 13 years, and Joan Shapiro 20 years.
At issue is the sum of money each of the surviving children, as well as the estates of the surviving parents of the Shapiros, are entitled to recover under DOSHA for the loss of the "care, comfort and companionship" of the decedents.
Based on the testimony of the witnesses and the exhibits, the Court finds that the surviving children were extremely close to their parents. For example, all of the Kowalsky sons lived within four miles of their parents' home at the time of the crash. See Trial Transcript ("Tr.") at 44. Even as adults, they all continued to see their parents almost every week. See Tr. at 30-33, 43-44, 67-68. Two of the Shapiro children were living with their parents at the time of the crash. See Tr. at 80. The closeness of each family unit was manifested by the frequency of family get-togethers and the ubiquitous outpouring of love and affection visited by the Kowalskys and Shapiros upon each of their children. Given the closeness of all the children to their parents and the almost daily intertwining of the children's lives with their parents', there is no rational basis to distinguish between each child's loss of care, comfort and companionship.
As for the Shapiros' parents, there was credible testimony from Norman Shapiro's brother, Bernard, attesting to the loss of the care, comfort and companionship suffered by the elderly parents of Joan and Norman Shapiro during their few remaining years after their children died. See Tr. at 99-103.

CONCLUSIONS OF LAW
The parties agree that the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1333, treaty jurisdiction pursuant to Article 28 of the Warsaw Convention, and that venue is appropriate pursuant to 28 U.S.C. § 1391(c).
The Court has previously discussed the damages available under DOSHA in In re Air Crash Near Nantucket Island, Mass., On October 31, 1999, 2002 WL 32302598 (E.D.N.Y.2002), to which the parties are *468 referred. As explained therein, prior to April of 2000, damages under DOSHA were limited to pecuniary damages. DOSHA was then amended, retroactive to deaths occurring after July 16, 1996, to also permit recovery for "non-pecuniary damages for wrongful death."[1] The amended statute defined non-pecuniary damages to mean "damages for loss of care, comfort, and companionship." 46 U.S.C.S Appx. § 762(b)(2).
"Care, comfort and companionship" are not defined in DOHSA and no other court has construed the scope of these terms. However, in analogous maritime wrongful death actions, see 46 U.S.C.S. Appx. § 761(a) (DOSHA actions deemed to be "in admiralty"), the term "society" has been defined to include "the range of mutual benefits each family member receives from the other's continued existence, including love, affection, care, attention, companionship, comfort, and protection." Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 585, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974); see also Giglio v. Farrell, 424 F.Supp. 927, 929 (S.D.N.Y.1977) ("[L]oss of society" defined as "including love, affection, care, attention, companionship, comfort and protection"). The Gaudet court made clear that loss of society does not encompass mental anguish or grief. See Gaudet, 414 U.S. at 585, n. 17, 94 S.Ct. 806; see also Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 623, n. 17, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978) ("The award contemplated by Gaudet is especially difficult to compute, for the jury must calculate the value of the lost love and affection without awarding damages for the survivors' grief and mental anguish, even though that grief is probably the most tangible expression of the survivors' emotional loss."). The parties agree that "loss of society" and loss of "care, comfort and companionship" should be interpreted as essentially identical in meaning. See Plaintiff's Post-Trial Submission at 18; Defendant's Post-Trial Submission at 7.
In the case of pecuniary damages, DOSHA has been construed to permit recovery for "[losses] sustained by the decedent's [spouse] ... parent, child or dependent relative." Oldham v. Korean Air Lines, Ltd., 127 F.3d 43, 54 (D.C.Cir.1997). Since non-pecuniary damages are "additional compensation ... for wrongful death of a decedent," 46 U.S.C.S. Appx. § 762(b)(1), such damages should also extend to these survivors.
While the parties agree that damages for the loss of care, comfort and companionship are warranted, they sharply dispute the appropriate amount of compensation. The parties also disagree whether there is sufficient evidence to support awarding such damages to the estates of the parents of Joan and Norman Shapiro. They further dispute whether prejudgment interest is appropriate, and the method for determining present value discounting.

1. Present Value Discounting
It is established law in this circuit that awards for non-pecuniary losses should be discounted to present value, but that this discounting should not be conducted with the statistical precision used for discounting future earnings. See Oliveri v. Delta Steamship Lines, 849 F.2d 742, 751 (2d Cir.1988) ("all that is required for awards of non-pecuniary future damages is that the time value of money be taken into account ... without any precise *469 mathematical adjustments"). See also Ramirez v. New York City Off-Track Betting Corp., 112 F.3d 38, 42 n. 5 (2d Cir.1997) (noting that the "standard for discounting when future non-pecuniary damages are involved ... appears to be lenient"). Although abjuring a precise statistical calculation, the Court has taken into account the time value of money in the calculation of its damage awards.

2. Prejudgment Interest
There is no bar to prejudgment interest under the Warsaw Convention if such damages are allowed by relevant local damages law. See Pescatore v. Pan Am. World Airways, Inc., 97 F.3d 1, 20-21 (2d Cir.1996). Since DOSHA actions, which come under the umbrella of the Warsaw Convention, are deemed to be "in admiralty," 46 U.S.C.S. Appx. § 761(a), admiralty law governs the award of such interest.
"To make an injured party whole, prejudgment interest should be awarded in admiralty cases absent exceptional circumstances." Jones v. Spentonbush-Red Star Co., 155 F.3d 587, 593 (2d Cir.1998). "[P]rejudgment interest is not awarded as a penalty; it is merely an element of just compensation." City of Milwaukee v. Cement Division, National Gypsum Co., 515 U.S. 189, 197, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995). EgyptAir acknowledges that prejudgment interest is within the discretion of the Court, but argues that exceptional circumstances barring prejudgment interest exist because: 1) only non-pecuniary damages are extant, 2) there has not been a liability finding against EgyptAir (although EgyptAir has acknowledged that it is not contesting liability), and 3) that on October 27, 2000, EgyptAir made advance payments of $600,000 to each family. The Court has considered each of these arguments, but in the exercise of its discretion will nonetheless award prejudgment interest.

3. Damages

A. For the Adult Children
In calculating damages, the Court must reconcile two factors. On the one hand, there can be little doubt that both the Kowalsky and Shapiro families were extraordinarily loving and close. On the other hand, all four decedents were of advanced years, and their children were productive and accomplished adults at the time of their parents' deaths.
The parties are far apart. The Kowalskys and Shapiros ask that each family be awarded $2,500,000 for the death of each parent, together with prejudgment interest. This equates to the principal sum of $625,000 per Kowalsky child and $833,333 per Shapiro child.
EgyptAir submits that damages should be assessed at $75,000 for each child per parent, amounting to total damages of $600,000 for the Kowalskys and $450,000 for the Shapiros.
"Damage awards in analogous cases provide an objective frame of reference, but they do not control [the Court's] assessment of individual circumstances." Moore v. M/V ANGELA, 353 F.3d 376, 384 (5th Cir.2003) (quotation omitted). See also Wareing Through Wareing v. United States, 943 F.Supp. 1504, 1543 (S.D.Fla.1996) ("Because of the necessarily subjective nature of non-economic damages, courts have often found guidance by reference to analogous cases involving similar injuries."). Cf. Ismail v. Cohen, 899 F.2d 183, 186 (2d Cir.1990) (in reviewing a jury's damages award, "[r]eference to other awards in similar cases is proper"). Case law provides a wide range of damage awards in non-DOSHA cases providing for non-pecuniary damages for wrongful death. As its best case, plaintiffs cite to McAsey v. United States Dept. of the Navy, 201 F.Supp.2d 1081, 1100 (N.D.Cal. *470 2002), where the adult children of a fifty-five year-old man were each awarded non-economic damages of $1,000,000 for the loss of "comfort, society, and protection" pursuant to the Federal Tort Claims Act ("FTCA").[2] For its best case, EgyptAir cites to Pietrantonio v. United States, 827 F.Supp. 458, 461 (W.D.Mich.1993), where the adult children of a sixty-four year-old man were each awarded non-economic damages of $30,000 for "loss of companionship" pursuant to the FTCA.
These cases, and others cited by the parties, represent the respective extremes of awards, and demonstrate the wide range of compensation that has been awarded for non-economic damages arising from a parent's death. The Court finds more instructive the awards given in Oldham v. Korean Air Lines Co., Ltd., 127 F.3d 43 (D.C.Cir.1997) and In re Air Crash Near Cerritos, California, On August 31, 1986, 982 F.2d 1271 (9th Cir.1992). In Oldham, a jury granted "loss of society" damages of $100,000 per parent to a twenty-nine year-old who lost sixty-four and fifty-five year-old parents under the pre-amended DOSHA.[3] Although remanding the non-economic damage awards for present value discounting, the Court in In re Air Crash approved, without discussion, the district court's awards of $100,000, $125,000 and $200,000 in non-economic damages to adult children for the loss of "comfort, care and society" from the death of a parent pursuant to the FTCA. The Court's decision does not reveal the ages of either the decedents or the adult children, and neither In re Air Crash nor Oldham discusses the closeness of the familial relationships.[4]
In making its awards, the Court, while treating the loss to each child to be of identical value considering the unity of the families and the close integration of each child into the family fabric, has taken into account the parents' varying life expectancies; furthermore, the Court believes that the awards should reflect the dual loss of both sets of parents during their life expectancies, since the collective loss of both parents obviously has a heightened impact over the loss of a single parent. Consequently, the awards vary. As previously noted, the Court has also considered the time value of money.
The Court awards Steven, Howard, Mark and Jeffrey Kowalsky $180,000 each for the death of Larry Kowalsky, and $200,000 each for the death of Edith Kowalsky. The Court awards Robert, Larry and Helene Shapiro $190,000 each for the death of Norman Shapiro, and $210,000 each for the death of Joan Shapiro.

B. For the Parents of Joan and Norman Shapiro
There was scant evidence put forward at trial regarding the loss of care, comfort and companionship suffered by Joseph and Blanche Shapiro and Frances Bonner, all of whom passed away after the crash. Nonetheless, their estates are entitled to some compensation for their non-pecuniary loss for the short time they lived after the death of their children. The Court awards the estates of Blanche and Joseph Shapiro $10,000 each, and the estate of Frances Bonner $25,000.

*471 CONCLUSION
The total awards for the children of each family  $1,520,000 for the Kowalsky family and $ 1,200,000 for the Shapiro family  will be paid to the respective plaintiffs in their trust capacities for distribution to each child. In addition, plaintiff Bernard Shapiro will be paid the sums due to the estates of Joseph Shapiro, Blanche Shapiro and Frances Bonner, to be remitted to the executors of the estates. By agreement of the parties, prejudgment interest will be calculated at a rate of 5%. Such interest will run on the full amount of the damages for the children from October 31, 1999, the date of the crash, to October 27, 2000, at which time EgyptAir made payments of $600,000 to each family  equaling $150,000 per Kowalsky child and $200,000 per Shapiro child. For the time period from October 27, 2000 to the date judgment is entered, prejudgment interest should be calculated on the remaining sums due the plaintiffs in accordance with this decision. Prejudgment interest will run on the sums due to the Shapiro and Bonner estates from October 31, 1999 to the date of entry of judgment.
SO ORDERED.
NOTES
[1] To recover either pecuniary or non-pecuniary damages, the death must have, as here, "resulted from a commercial aviation accident occurring on the high seas beyond 12 nautical miles from the shore of any State ... of the United States." 46 U.S.C.S. Appx. § 762(b)(1).
[2] "Under the Federal Tort Claims Act, liability and damages are determined by the law of the forum state." Id. at 1102.
[3] Subsequent to the jury's award in Oldham, the Supreme Court held that "loss of society" damages were not available under the pre-amended DOSHA. See Zicherman v. Korean Air Lines Co., Ltd., 516 U.S. 217, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996).
[4] The underlying district court determination in In re Air Crash is neither published nor available via electronic database.